UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rodney Parker, #315646, | ) |
|                         Plaintiff, | ) C/A No.  5:13-02795-TLW-KDW |
| v. | ) |
| Warden Stevenson; Major Sutton; Captain Washington; Lt. Jackson; Sgt. Esterline; Sgt. JC Williams; Ofc. Beckett; Ofc. McCoy; Ofc. Suarez; Ofc. Dooley; Nurse K. McCullough; and Nurse Jane Doe, | ) Report and Recommendation |
|                         Defendants. | ) |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment, ECF No. 61, filed on May 19, 2014.[1] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) the court advised Plaintiff, on May 21, 2014, of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 62. On July 24, 2014, Plaintiff filed a Response in Opposition to Defendants'

---

[1] Plaintiff also filed a Motion for Summary Judgment, ECF No. 58, on May 14, 2014. While couched a Summary Judgment Motion, Plaintiff essentially argues that he be granted more time to file motions to compel to enable him to present facts in support of his claim and show that a genuine issue of material fact exists. *See id.* Thereafter, Plaintiff filed Motions to Compel, ECF Nos. 59, 60. In response to Plaintiff's Motions, Defendants represented to the court that they submitted the discovery sought by Plaintiff in his Motions to Compel. *See* ECF No. 65. Therefore, the undersigned finds that this purported Motion for Summary Judgment, ECF No. 58, should be denied as moot.

Motion.[2] ECF No. 71. On August 27, 2014, Plaintiff filed a Supplemental Reply to Defendants' Motion for Summary Judgment. ECF No. 77. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

I.     Background

Plaintiff, Rodney Parker, is an inmate currently housed at Lieber Correctional Institution. ECF No. 1 at 2. The facts giving rise to Plaintiff's Complaint occurred at Broad River Correctional Institution ("BRCI"). *Id.* Plaintiff maintains that on March 25, 2011, he and Sgt. Esterline ("Defendant Esterline") got into an altercation about Plaintiff obtaining his legal materials, and Plaintiff admits to throwing feces at Defendant Esterline during the altercation. *Id.* at 3. Thereafter an extraction team removed Plaintiff from his cell. *Id.*, ECF No. 61 at 2. During the cell transfer, the video camera became inoperable. ECF Nos. 1 at 3, 61 at 4. While the transfer was not being recorded, Plaintiff alleges that he "was severely beaten by the officers [and] was kicked, punched, had knees and elbows dropped on [him] and [he] was choked unconscious, which resulted in [him] being badly bruised and banged up." ECF No. 1 at 3. Additionally, Plaintiff claims that the restraints placed on his wrists and ankles "were extremely tight cutting into [his] skin deeply leaving permanent scars on [his] abdomen." *Id.* Thereafter, Plaintiff maintains he was strapped down in a mechanical restraint chair for a period of four hours. *Id.* Plaintiff alleges that he was only minimally examined by nurses. *Id.* Plaintiff further contends that for approximately four months he was without clothing, bedding, or other items. *Id.* at 3-4. As a result, Plaintiff claims he suffered mental, physical, and emotional trauma for

---

[2] Though captioned as a Motion for Summary Judgment, the court construed Plaintiff's filing, ECF No. 71, as a Response to Defendants' Motion for Summary Judgment. *See* ECF No. 72.

which he had to undergo psychological treatment. *Id.* at 4. Finally, Plaintiff maintains he is "still taking psychotropic medications as a result of the cruel and unusual punishment [he] endured at BRCI." *Id.*

Plaintiff filed his Complaint on October 15, 2013. *Id.* There, Plaintiff recites facts and makes references to claims for excessive force, medical indifference, and conditions of confinement. *Id.* at 4-5. Plaintiff seeks $300,000 in compensatory damages "for the use of excessive force and strip cell," $5,000 against each Defendant in his or her individual capacity, $5,000 against each Defendant in his or her official capacity, and $100,000 in punitive damages "for use of excessive force and strip cell," "and all other relief that the courts seem (sic) just and fair." *Id.* at 5.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla

3

of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

   III.   Analysis

       A. Excessive Force Claim

Defendants argue that Plaintiff has failed to state facts sufficient to state a § 1983 cause of action. ECF No. 61 at 7. Furthermore, Defendants maintain that Plaintiff's allegations of excessive force against Defendants are not factually supported. *Id.* at 9. On the contrary, Defendants contend that the use of force was adequately documented and does not support Plaintiff's allegations of abuse. *Id.* Defendants also maintain that there is no correlation between the cell transfer and Plaintiff's emotional state. *Id.* at 10. Specifically, Defendants argue that "Plaintiff had a history of psychiatric evaluation, diagnosis of mental illness, and prescription for medication to treat the same, long before the March 25, 2011 events." *Id.*

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756,

761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendants assaulted and retrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321.

Considering the first and second *Whitley* factors, the undersigned finds Defendants have presented evidence that demonstrates Defendant Esterline and the extraction team restrained Plaintiff and used an amount of force necessary to restore order and not for the very purpose of causing Plaintiff harm. As Plaintiff admitted, and according to the incident report, Plaintiff threw his own feces at Defendant Esterline during a dispute. ECF Nos. 1 at 3, 61-2 at ¶ 13, Exhibit F to ECF No. 61-2. Additionally, Plaintiff pleaded guilty to "Throwing of any Substance or Object on an SCDC Employee or Other Government Employee, Contract Employee, or Volunteer." Exhibit F at 2 to ECF No. 61-2. Furthermore, evidence demonstrates that correctional officers used an extraction chair because Plaintiff "refused to comply with directive to voluntarily

5

surrender to SCDC Officers for removal. . . ." ECF No. 61-2 at ¶ 13. Plaintiff does not indicate whether he complied with directives after the altercation with Defendant Esterline, but he admits that "a force cell movement team was put together, at which time I was extracted from my cell #115." ECF No. 1 at 3. Therefore, the court finds there was sufficient need for application of force under prong one of *Whitley* based on Plaintiff's actions against an SCDC correctional officer. Furthermore, the undersigned finds that a reasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley*.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, the evidence before the court does not support Plaintiff's contention that he was severely beaten, choked unconscious, or sustained permanent scarring from tight restraints. Some evidence demonstrates that Plaintiff had bruising or "redness" around his face and chest area during or after the cell extraction. *See* ECF No. 71-1 at 14. Additionally, this evidence demonstrates that Plaintiff had some "scratches" around his wrists. *See id.* Reports of force also indicate that Plaintiff's handcuffs were loosened to minimize force. *See id*; ECF No. 61-3 at ¶ 8. On the day of the cell-transfer, Nurse Sherry Dale examined Plaintiff after his placement in the restraint chair following the cell extraction. ECF No. 61-3 at ¶ 5. Nurse Dale recommended the officers loosen Plaintiff's handcuffs, and they complied. *Id.* at ¶ 7. Additionally, Nurse Dale assessed Plaintiff's condition and "noted no injury or need for further medical attention." *Id.* at ¶ 8. Plaintiff submitted his medical records to the court, including a medical encounter note from March 26, 2011, the day following the incident. ECF Nos. 71-4, 71-5. However, nothing in his medical records substantiates Plaintiff's allegations of being severely beaten, choked unconscious, or sustaining permanent scarring. *See id.* Plaintiff also maintains that these events caused him to suffer mental and emotional trauma. ECF No. 1 at 4. However, as Defendants have well-documented, Plaintiff

6

had a history of mental illness and took medication for his mental health issues well before the March 25, 2011 incident. *See* ECF 61-4.

Finally, the undersigned examines the fourth prong of *Whitley*, the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. Here, Plaintiff was the initial aggressor in the incident and failed to comply with orders during the March 25, 2011 incident. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Hill v. Crum*, 727 F.3d 312, 328 (4th Cir. 2013) (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification.").

The undersigned finds there are several undisputed facts in the record concerning the altercation between Plaintiff and Defendant Esterline. There is no evidence supporting Plaintiff's claims that Defendants acted with an unreasonable amount of force. Therefore, no genuine issue of material fact exists indicating Plaintiff's Eighth Amendment rights were violated, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claim.

### B. Control Cell Status

Defendants maintain that Plaintiff's allegations with regard to his control cell status do not rise to the level of constitutional deprivations of rights. ECF No. 61 at 11.

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). To establish the subjective component of a conditions-of-confinement

claim, a prisoner must show that prison officials acted with deliberate indifference—that is, the prisoner must show the officials acted with more than mere negligence but less then malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 F. App'x. 348, 353 (4th Cir. 2012). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care. . . ." *Farmer*, 511 U.S. at 832. Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal citation omitted) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.").

The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994); *see also*, *Posey v. Dewalt*, 86 F. Supp. 2d 565, 571 (E.D. Va. 1999) (stating that "[p]ut simply, petitioner has not stated a viable due process claim because he has no protected liberty interest in a particular classification within [Bureau of Prisons]"). "[A]n inmate's disagreement with [his custodial] classification is insufficient to establish a constitutional violation." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). To show a constitutional violation with respect to a custody classification, Plaintiff must show that the conditions of confinement exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472 (1995).

8

Plaintiff has failed to present any evidence to show that his classification and resulting conditions of confinement exceed the terms of his sentence or create an atypical or significant hardship. *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir.1997) ("Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *see generally Sweet v. South Carolina Dep't of Corr.*, 529 F.2d 854, 859 (4th Cir. 1975) (describing federal court's deference to prison administrators and all administrative matters unless the condition arises to the level of a constitutional violation); *see also Brown v. Evatt*, 322 S.C. 189, 195, 470 S.E.2d 848, 851 (1996) (South Carolina statutes and regulations regarding classification of prisoners create no liberty interest in a security or custody classification). To the extent Plaintiff argues his controlled cell status and conditions of confinement there amounted to cruel and unusual punishment, these allegations fail to establish constitutional violations.

Here, Warden Sutton explains that control cells are "administrative options for staff in response to violent and destructive inmate behavior." Sutton Aff. ¶ 5, ECF No. 61-2. Furthermore, Warden Sutton avers that pursuant to SCDC Policy OP-22.12, an inmate may be placed in a control cell if the inmate is a threat to others by his action, is deliberately causing damage to the cell, is using items in the cell to cause damage or is using items in the cell to disrupt operations in any manner. *Id.* at ¶ 6. Since arriving at BRCI on March 9, 2011, Warden Sutton indicates that Plaintiff was charged with three disciplinary violations before the altercation with Defendant Esterline that is the underlying subject of this lawsuit. *Id.* at ¶¶ 8-12.

Based on the March 25, 2011 altercation and the other disciplinary violations, Plaintiff was placed on control cell status. *Id.* ¶ 17.

The evidence demonstrates that SCDC personnel have segregated Plaintiff from the general population, removed Plaintiff's personal belongings, and placed him in a control cell. However, the Fourth Circuit has held that the restrictive conditions of high security incarceration do not rise to the level of cruel and unusual punishment. *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 471 (4th Cir. 1999) ("These conditions are indeed restrictive, but the restrictive nature of high-security incarceration alone does not constitute cruel and unusual punishment."); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (finding the district court properly granted summary judgment in favor of prison officials where inmates complained of a six-month administrative confinement, claiming that the length of the confinement and the conditions to which they were exposed made the assignment an atypical and significant hardship). The undersigned finds that Plaintiff failed to offer any evidence of deliberate indifference concerning Plaintiff's conditions-of-confinement claim nor has Plaintiff demonstrated an extreme deprivation of his rights. Therefore, the undersigned recommends granting Defendants' Motion for Summary Judgment and dismissing Plaintiff's cause of action for constitutional deprivation of rights based on his control cell status and the conditions existing there.

### C. Medical Indifference Claim (Lack of Medical Care in Control Cell)

Defendants argue they are entitled to summary judgment on Plaintiff's medical indifference claims. ECF No. 61 at 7, 10-11. Additionally, Defendants maintain that Plaintiff's self-diagnosis without verification will not support a medical conclusion, and his medical records do not support his allegations that "SCDC staff were deliberately indifferent to Plaintiff's risk of

harm to reach the threshold of a cognizable claim of a violation of his Constitutional rights to be free from cruel and unusual punishment." *Id.* at 10-11.

Plaintiff maintains that Defendants acted with indifference to his medical needs when he was placed in a control cell. ECF Nos. 71 at 22, 77 at 10. Specifically, Plaintiff alleges that he is swollen in his lower extremities because he is "forced to walk on the bare concrete floor without shower shoes or socks because he was denied access to his property." ECF No. 77 at 10; *see also* ECF No. 1 at 4 (where Plaintiff indicates his "legs, feet and ankles swole (sic) up trememdously. . . ." He further maintains that "Defendant Sutton was deliberate[ly] indifferent to his medical needs and/or condition and kept citing that Plaintiff was a security threat to himself and to other officers who worked around him." *Id.* at 11. Plaintiff indicates that he was not given his mattress and a pillow despite Dr. Sampson's orders. *Id.* at 10-11; ECF No. 71 at 22.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to

11

fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendants intentionally or recklessly disregarded Plaintiff's medical needs. Further, the record before the court reveals that Plaintiff was assessed by SCDC medical staff more than 20 times between March 25, 2011, and June 6, 2011. Smith Aff. ¶ 13, ECF No. 61-4. Furthermore, SCDC staff ordered x-rays of Plaintiff's ankles and feet following his complaints of swelling. *Id.* at ¶. 15. The results of those x-rays indicate "no evidence of fracture or destructive change" to Plaintiff's left and right ankles. *Id.; see also* Exhibit G to Smith Aff. Additionally, x-rays of Plaintiff's feet indicate "diffuse soft tissue edema [with] [n]o underlying osseous abnormalities [] identified." *Id.* The evidence before the court indicates that Plaintiff has experienced swelling in his lower extremities, and Defendants treated the condition rather than ignored it. Accordingly, the undersigned recommends Defendants be granted summary judgment on Plaintiff's cause of action for medical indifference.

### D. Eleventh Amendment/Official Capacity

Defendants argue that as employees of the SCDC they are not subject to suit in their official capacities. ECF No. 61 at 16. The undersigned agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants are agents or employees of the State of South Carolina, when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

    E. Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 61 at 17-18. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 61, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

*[Signature: Kaymani D. West]*

October 30, 2014                                                                 Kaymani D. West
Florence, South Carolina                                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

15