UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rodney Parker, #315646, ) | |
| ) | C/A No.  5:13-02795-TLW-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Report and Recommendation |
| Warden Stevenson; Maj Sutton; Cpt ) | |
| Washington; Lt. Sylvia Jackson; Sgt. ) | |
| Esterline; Sgt. JC Williams; Ofc. Beckett; ) | |
| Ofc. McCoy; Ofc. Suarez; Ofc. Dooley; ) | |
| Nurse K. McCullough; and Nurse Jane ) | |
| Doe, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter was before the court previously on Defendants' Motion for Summary Judgment, ECF No. 61, filed on May 19, 2014.

On October 30, 2014, the undersigned filed a Report and Recommendation ("R&R"), recommending the District Court grant Defendants' Motion for Summary Judgment, thereby dismissing Plaintiff's case. ECF No. 80. On March 30, 2015, the District Court accepted the R&R over Plaintiff's objections. ECF No. 85. Thereafter, Plaintiff appealed the District Court's order to the Fourth Circuit Court of Appeals ("the Fourth Circuit"). *See* ECF No. 88. On October 20, 2015, the Fourth Circuit remanded the matter to this court for further proceedings. ECF No. 96.

On December 7, 2015, Defendants filed a Supplemental Motion for Summary Judgment. ECF No. 106. The court issued an order on December 8, 2015, pursuant to *Roseboro v. Garrison*,

528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 107. When Plaintiff filed no response to the Supplemental Motion for Summary Judgment within the time allotted, on February 3, 2016, the court directed Plaintiff:

> [T]o advise the court whether he wishes to continue with this case and to file a response to Defendants' Supplemental Motion for Summary Judgment by February 29, 2016. Plaintiff is further advised that if he fails to respond, the court will rule on the pending Motion for Summary Judgment, ECF No. 106, without considering a supplemental response from Plaintiff and relying only on Plaintiff's prior Response to Defendants' initial Motion for Summary Judgment, ECF No. 71.

ECF No. 110. Plaintiff filed a Supplemental Response on March 16, 2016. ECF No. 117. This second R&R follows.

I.     Background

Plaintiff, Rodney Parker, is an inmate currently housed at Lieber Correctional Institution. ECF No. 1 at 2. The facts giving rise to Plaintiff's Complaint occurred at Broad River Correctional Institution ("BRCI"). *Id.* Plaintiff maintains that on March 25, 2011, he and Sgt. Esterline ("Defendant Esterline") got into a dispute about Plaintiff obtaining his legal materials, and Plaintiff admits to throwing feces on Defendant Esterline. *Id.* at 3. Thereafter an extraction team removed Plaintiff from his cell. *Id.*, ECF No. 61 at 2. During the cell transfer the video camera became inoperable. ECF Nos. 1 at 3, 61 at 4. Plaintiff alleges that during that period, when the transfer was not being recorded, he "was severely beaten by the officers [and] was kicked, punched, had knees and elbows dropped on [him] and [he] was choked unconscious, which resulted in [him] being badly bruised and banged up." ECF No. 1 at 3. Additionally, Plaintiff claims that the restraints placed on his wrists and ankles "were extremely tight cutting into [his] skin deeply leaving permanent scars on both [his] wrist and ankles. Also the

2

bellychains were pulled extremely tight cutting into [his] skin leaving permanent scars on [his] abdomen." *Id.* Thereafter, Plaintiff maintains he was strapped down in a mechanical restraint chair for a period of four hours. *Id.* Plaintiff alleges that he was only minimally examined by nurses. *Id.* Plaintiff further contends that for approximately four months he was without clothing, bedding, or other items. *Id.* at 3-4. As a result, Plaintiff claims he suffered mental, physical, and emotional trauma for which he had to undergo psychological treatment. *Id.* at 4. Finally, Plaintiff maintains he is "still taking psychotropic medications as a result of the cruel and unusual punishment [he] endured at BRCI." *Id.*

Plaintiff filed his Complaint on October 15, 2013. *Id.* There, Plaintiff recites facts and makes references to claims for excessive force, medical indifference, and conditions of confinement. *Id.* at 4-5. Plaintiff seeks $300,000 in compensatory damages "for the use of excessive force and strip cell," $5,000 against each Defendant in his or her individual capacity, $5,000 against each Defendant in his or her official capacity, and $100,000 in punitive damages "for use of excessive force and strip cell," "and all other relief that the courts seem (sic) just and fair." *Id.* at 5.

In its decision, the Fourth Circuit affirmed the District Court's grant of summary judgment to Defendants on Plaintiff's Eighth Amendment excessive force claim against Defendants in their official capacities and with respect to Plaintiff's claims for cruel and unusual punishment and deliberate indifference stemming from Plaintiff's conditions of confinement in a control cell. ECF No. 94 at 11. However, on remand to this court, the Fourth Circuit found that this court erred by using "an incorrect standard to review the subjective competent of [Plaintiff's] excessive force claim, a standard that incorrectly considered the 'extent of the injury inflicted.'" *Id.* at 5. Additionally, the Fourth Circuit held that the undersigned "placed too much weight on

the injuries it concluded [Plaintiff] sustained when determining the extent of the force used by the extraction team." *Id.* at 6. Finally, the Fourth Circuit concluded that the R&R "failed to view the facts and the inferences drawn therefrom in the light most favorable to [Plaintiff]." *Id.* at 7.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 251.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*,

4

405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

   III.   Analysis

      A.   Use of Force Test

In their sole argument to the court, Defendants maintain they are "entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment claim for excessive force where the evidence submitted by Defendants irrefutably shows that Defendants did not use an unreasonable amount of force to extract Plaintiff from his cell and to place him in restraints after Plaintiff assaulted an officer and refused to obey orders of the correctional institution staff." ECF No. 106 at 8. Specifically, Defendants maintain that video evidence, and affidavits of Defendant Sutton and Nurse Dale "blatantly contradict[] the evidence proffered by Plaintiff that he was subjected to excessive force during his extraction from his cell and placement into restraints." *Id.* Further, Defendants argue that an analysis of the factors outlined in *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) establish that Defendants are entitled to summary judgment on Plaintiff's excessive force claim. *Id.* at 10.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish

that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d at 238 (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components. For the subjective component, Plaintiff must prove that Defendants assaulted and retrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

On remand, the Fourth Circuit instructed the undersigned to use the following test in order to analyze the subjective component of the excessive force for Plaintiff's cause of action:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Iko v. Shreve*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321 in factors (1), (2), and (4) only).

In its prior R&R, the undersigned followed four-factor test outlined in *Whitley*: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "*the extent of the injury inflicted*"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley v. Albers,* 475 U.S. at 321; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Whitley*, 475 U.S. at 321) ("[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, [and] [t]he extent of injury may also provide some indication of the amount of force applied."); *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (emphasis added) ("In determining whether a prison official has acted with 'wantonness in the infliction of pain,' *Whitley*, 475 U.S. at 322, 106 S.Ct. 1078, courts should consider the necessity for the application

of force; the relationship between the need for force and the amount of force used; *the extent of the injury inflicted*; the extent of the threat to the safety of the staff and other prisoners, as reasonably perceived by prison officials based on the facts known to them at the time; and the efforts, if any, taken by the officials to temper the severity of the force applied.); *Thompson v. Shelton*, 541 F. App'x 247, 249 (4th Cir. 2013) (emphasis added) ("Factors relevant to this determination include "the need for the application of force, the relationship between the need and the amount of force that was used," *the extent of the injury*, the threat reasonably perceived by the responsible official, "and any efforts made to temper the severity of a forceful response."); *Wernert v. Green*, 419 F. App'x 337, 340 (4th Cir. 2011) (internal citation omitted) (emphasis added) ("In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, *the extent of the injury inflicted*, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.").

However, the Fourth Circuit determined that because the undersigned used the *Whitley* test instead of the *Iko* test, the prior R&R "placed too much weight on the injuries it concluded [Plaintiff] sustained when determining the extent of force used by the extraction team." ECF No. 94 at 6. Therefore, as instructed, the undersigned will analyze this case strictly by the factors set forth in *Iko v. Shreve*.

B. *Iko* Analysis

Mindful of the Fourth Circuit's instruction, the undersigned will consider the explicit factors from the *Iko* opinion and the available evidence in the present case. The four *Iko* factors include:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Iko v. Shreve*, 535 F.3d at 239.

Under the first factor, "the need for the application of force," the undersigned finds that Plaintiff admittedly threw feces on Defendant Esterline. ECF No. 1 at 3; 117 at 3. Additionally, at his disciplinary hearing Plaintiff pleaded guilty to "Throwing of any Substance or Object on an SCDC Employee or Other Government Employee, Contract Employee, or Volunteer." ECF No. 61-2 at 19. Furthermore, evidence demonstrates that correctional officers used chemical munitions and cell extraction because Plaintiff "refused to comply with directives to voluntarily surrender to SCDC Officers for removal to the restraint chair." ECF No. 61-2 at 3. Plaintiff does not indicate whether he complied with directives, but he admits that "a force cell movement team was put together, at which time I was extracted from my cell #115." ECF No. 1 at 3. Therefore, the undersigned finds there was sufficient need for application of force under prong one of *Iko* based on Plaintiff's actions against an SCDC correctional officer.

The undersigned cannot effectively weigh the second and third *Iko* factors—"the relationship between the need and the amount of force that was used" and "the extent of any reasonably perceived threat that the application of force was intended to quell." Here, the parties have presented the court with two different versions of the facts giving rise to Plaintiff's cell extraction and actions taken by officers during the cell extraction.

In an Affidavit attached to his Complaint, Plaintiff attests that on March 25, 2011, he was placed in a mechanical restraint chair after officers entered his cell and beat him severely. ECF No. 1-1. Plaintiff avers that he was punched, kicked, choked, and had knees dropped in [his] back and on [his] head." *Id.* Moreover, Plaintiff represents that he was choked until he went

8

unconscious. *Id.* Plaintiff provided the court with grievances he filed after the March 25, 2011 incident in a Supplement filing to his own Motion for Summary. ECF No. 77. In one grievance, he indicated that he is suffering from several injuries after being beaten by several correctional officers. ECF No. 77-2 at 26. In a separate grievance form, Plaintiff represents that he was subjected to cruel and unusual treatment on March 25, 2011, when he was placed in a restraint chair. *Id.* at 36.

In the Supplement filing to his own Motion for Summary, ECF No. 77, Plaintiff also submitted affidavits from seven fellow inmates. ECF No. 77-3 to 77-9. Not all the affidavits indicate that officers used excessive force on Plaintiff during the cell extraction, but some affidavits point to force used against Plaintiff. *See* ECF No. 77-4, 77-6, 77-7, 77-8. Inmate Unula Boo-Shawn attests that he "personally witness[ed] several correction[al] officers escorting [Plaintiff] in full body restraints to place him into the restraint chair though he was not out of control and obeying all officer commands on or about March 25, 2011." ECF No. 77-3. Additionally, Inmate Quentin Jenkins attests that on March 25, 2011, he witnessed "officers physically take [Plaintiff] out of his cell with brute force, up front to place him in a[n] inhumane restraint chair. . . ." ECF No. 77-5. Finally, Inmate Nathan Luckett attests that on March 25, 2011, he witnessed correctional officers "roll on" Plaintiff and he could "hear them beating on him." ECF No. 77-9. Further, Inmate Luckett represents that he "could only hear [Plaintiff] moaning and groaning." *Id.*

In support of their Supplemental Motion for Summary Judgment, Defendants submitted four video clips of Plaintiff's cell extraction. *See* ECF No. 106-1. The undersigned has reviewed the four video clips. Though the available clips conform to Defendants' version of events, a

9

rather lengthy portion of Plaintiff's extraction was cut short because the batteries in the video camera died.

In the first video clip, Supervisor/Lieutenant Jackson appeared and recited the date of March 25, 2011. She further indicated that Plaintiff was going to be extracted from cell 115 because he threw what is believed to be feces at an Officer, striking him in the face and legs. Additionally, Officer Jackson stated that Plaintiff was refusing to comply with direct orders to be handcuffed. Thereafter, Officer Jackson identified the Officers that were part of the forced-cell extraction team, and they proceeded to Plaintiff's cell. As they were walking toward Plaintiff's cell, loud banging is audible on the video, but the source of the noise is unclear. Once the extraction team arrived at Plaintiff's cell, the video becomes rather dark, but Plaintiff was instructed to go to the back of his cell and lie down on the floor. Plaintiff did not appear to comply with the instructions, and the extraction team is seen entering the cell to put restraints on Plaintiff. At this point, the video cuts off.

In the second video clip, Officer Jackson appeared on screen and indicated that the batteries went out on the video camera while guards were escorting Plaintiff from his cell. Plaintiff is seen in the restraint chair where he says that he accepted his punishment, but he told the guards that his restraints were too tight. A nurse examined Plaintiff to inspect his restraints to determine if they were too tight. Officers are then seen adjusting the restraints. The restraints are re-examined, and Plaintiff does not make a complaint. When asked if any of the officers have an injury, one officer stated he had a scratch, and he was examined by the nurse. Plaintiff was then left alone in the restraint chair "on a 15-minute watch."

In the third clip, Plaintiff is examined by a nurse and a female officer for any injuries. Minor scratching and some bruising was noted on Plaintiff's chest area and arm area. The

10

supervisor indicated that Plaintiff will be examined by medical staff. In the fourth clip, officers assemble to remove Plaintiff from the restraint chair. Other than Plaintiff making uncomfortable faces from the officers' removal of the restraints, there is no use of force noted in the final video clip. Once Plaintiff is standing he was examined by the nurse for any injuries. Officers then walk with Plaintiff, while still partially restrained, back to his cell. Once inside his cell, it appears that the officers removed most of the restraints without incident. Plaintiff was again examined by the nurse. Officers exited the cell and Plaintiff's hand restraints were removed through the cell door flap. The video concludes with an officer reporting that Plaintiff was returned to his cell with no apparent injuries.

The video is the only piece of undisputed evidence before the court. According to Plaintiff's allegations, he was severely beaten, choked unconscious, and sustained permanent scarring from tight restraints. However, according to the Defendants, no unreasonable amount of force was used on Plaintiff. Based on the evidence presented, the undersigned is unable to weigh the second *Iko* factor because part of the video was cut short. Accordingly, based on the available evidence, the amount of force that was used or the need for the force applied after officers began to extract Plaintiff from his cell remains a disputed issue of fact.

Furthermore, the undersigned is unable to determine from the video clips the third *Iko* factor—the extent of any reasonably perceived threat that the application of force was intended to quell. As stated in the analysis of the first factor, Plaintiff admittedly threw feces at an officer and was disobeying direct orders. It is clear, at least in the first video clip of the cell extraction, that Plaintiff refused to voluntarily surrender to SCDC officers. However, whether Plaintiff became more of a threat to officers during the cell extraction necessitating the use of additional force or whether Plaintiff eventually complied and surrendered to officers is unclear. Therefore,

11

the undersigned is unable to weigh the third *Iko* factor because of the missing portion of video from the cell extraction.

The undersigned finds that the fourth *Iko* factor—"any efforts made to temper the severity of a forceful response"—weighs in favor of Defendants. The undisputed video and other evidence indicates that prior to forcefully putting Plaintiff into a restraint chair, Plaintiff was given several opportunities to voluntarily surrender himself to officers and thereby avoid forceful entry into the chair, but he refused. Further, as explained in the summary of the video clips, Plaintiff was examined by SCDC staff numerous times to ensure he was not severely injured or in peril. Officers are seen loosening Plaintiff's restraints at Plaintiff's request and medical treatment was secured for Plaintiff following the cell extraction. Other written evidence conforms to the evidence contained on the video.

As attested to by Nurse Sherry Dale, on the day of the cell-transfer, she examined Plaintiff after his placement in the restraint chair following the cell extraction. ECF No. 61-3 at 2. Nurse Dale recommended the officers loosen Plaintiff's handcuffs, and they complied. *Id*. Once the restraints are loosened, Nurse Dale assessed Plaintiff's condition and "noted no injury or need for further medical attention." *Id.* She specifically attested to the fact that she "saw no injury or other evidence of [Plaintiff] sustaining a beating by SCDC Officers nor did [she] observe any evidence of bruising, cuts or scarring associated with handcuffs being placed too tightly on [Plaintiff]" ECF No. 61-3 at 2. Therefore, the fourth *Iko* factor weighs in favor of Defendants because Defendants took action to lessen the severity of any harm by checking Plaintiff's restraints, loosening Plaintiff's restraints, and giving Plaintiff medical attention during and after the forced cell extraction.

Defendants argue that the evidence they submitted blatantly contradicts the evidence proffered by Plaintiff that he was subjected to excessive force. However, material issues of fact remain concerning the actions taken by SCDC officers during Plaintiff's forced cell extraction—specifically regarding the second and third *Iko* factors. Based on these genuine issues of material fact, the undersigned recommends Defendants' Motion for Summary Judgment be denied on Plaintiff's excessive force claim. *See Mann v. Failey*, 578 F. App'x 267, 275 (4th Cir. 2014) (holding a plaintiff's presentation of "necessary briefs, affidavits, and corroborative evidence to support his claims" created a jury issue and "disputes of credibility are reserved for a fact finder").

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Supplemental Motion for Summary Judgment, ECF No. 106, be denied.

IT IS SO RECOMMENDED.

March 30, 2016                                               Kaymani D. West
Florence, South Carolina                                     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

13